# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **GOLDWATER BANK, N.A.,** | ) | |
| **Plaintiff** | ) | |
| **v.** | ) | **Case No. 21-cv-10246-DJC** |
| **CHRISTIAN KULIKOWSKI; CATHRYN KULIKOWSKI; CARDINAL FINANCIAL COMPANY, L.P.; FIRST SOURCE TITLE AGENCY, INC.; GREAT LAKES SETTLEMENT AND CLOSING, INC.; and THE UPTOWN LAW FIRM, LLC,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                          **February 1, 2022**

## I.      Introduction

Plaintiff Goldwater Bank, N.A. ("Goldwater") has filed this lawsuit against Defendants Christian Kulikowski and Cathryn Kulikowski (the "Kulikowskis"), Cardinal Financial Company, L.P. ("Cardinal"), First Source Title Agency, Inc. ("First Source"), Great Lakes Settlement and Closing, Inc. ("Great Lakes") and The Uptown Law Firm, LLC ("Uptown") (collectively, "Defendants") alleging claims for declaratory judgment against all Defendants pursuant to 28 U.S.C. § 2201 and 15 U.S.C. § 1635 (Count I); breach of fiduciary duty against First Source, Great Lakes and Uptown (Count II); breach of contract against First Source, Great Lakes and Uptown in the alternative (Count III); conversion against Cardinal (Count IV) and violations of Mass. Gen.

1

L. c. 93A against Cardinal (Count V) arising from the distribution of funds in a residential mortgage refinancing transaction.  D. 15.

Before this Court are three separate motions to dismiss:  Cardinal and Uptown each move to dismiss Goldwater's amended complaint, D. 16; D. 32, and Goldwater moves to dismiss the Kulikowskis' counterclaims, D. 27.  For the reasons stated below, the Court ALLOWS IN PART and DENIES IN PART Cardinal's motion to dismiss, D. 16, DENIES Uptown's motion to dismiss, D. 32, and ALLOWS IN PART and DENIES IN PART Goldwater's motion to dismiss the Kulikowskis' counterclaim, D. 27.

## II.     Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face."  García-Catalán, 734 F.3d at 103 (citation omitted).

## III.    Factual Background

The following factual allegations in Goldwater's amended complaint, D. 15, are accepted as true for consideration of the motions to dismiss.

2

On or around November 24, 2020, Goldwater originated a mortgage loan to the Kulikowskis for $780,000.00 ("Goldwater Loan") secured by real property located in Stoneham, Massachusetts (the "Property").  D. 15 ¶ 11.  The Kulikowskis intended to use a portion of the Goldwater Loan proceeds to refinance and pay off an existing loan owned by Cardinal that was also secured by the Property ("Cardinal Mortgage").  Id. ¶ 19.

Goldwater engaged First Source, Uptown and Great Lakes (collectively, "Escrow Agents") to provide escrow services and facilitate the Goldwater Loan's closing.  Id. ¶ 18.  First Source agreed to act as title and escrow agent for the closing.  Id. ¶ 12.  Uptown agreed to act as closing agent and to provide wire transfer services at closing.  Id. ¶ 16.  Great Lakes agreed to coordinate among Goldwater, First Source, Uptown and Cardinal.  Id. ¶ 14.  All the Escrow Agents received financial compensation for their services.  Id. ¶¶ 13, 15, 17.

On or around November 28, 2020, the Kulikowskis executed a Notice of Right to Cancel form, which was provided to them by Goldwater under the Truth in Lending Act ("TILA"), and returned the form to Goldwater.  Id. ¶ 20.  Great Lakes learned of the Kulikowskis' rescission of the Goldwater Loan transaction on the morning of November 30, 2020.  Id. ¶ 22.  Great Lakes did not communicate the rescission to First Source and Uptown on that day.  Id. ¶ 23.  Accordingly, despite the Kulikowskis' delivery of the Notice of Right to Cancel form to Goldwater, First Source and Uptown, acting on Goldwater's behalf, disbursed the Goldwater Loan from escrow.  Id. ¶ 24.  In so doing, First Source, or Uptown acting on its behalf, transferred $634,672.66 of the Goldwater Loan funds (the "Proceeds") to Cardinal to pay off Cardinal's loan on the Property.  Id. ¶ 25.  The Proceeds were received by the sub-servicer of the loan securing the Cardinal Mortgage.  Id. ¶ 26.

The next day, on December 1, 2020, Goldwater instructed the Escrow Agents to return the Proceeds due to the Kulikowskis' rescission.  Id. ¶ 27.  The Escrow Agents did not contact Cardinal

seeking return of the Proceeds until December 4, 2020, when First Source informed Cardinal of the rescission.  Id. ¶¶ 28–29.  Also on December 4, 2020, First Source informed Goldwater that it was attempting to retrieve the Proceeds from Cardinal.  Id. ¶ 29.

When First Source informed Cardinal of the rescission on December 4, 2020, the Proceeds had not yet been applied to pay off the Cardinal Mortgage.  Id. ¶ 30.  On December 8, 2020, Mortgage Electronic Registration Systems, Inc. ("MERS") recorded a Satisfaction and Discharge of the Cardinal Mortgage as nominee for Cardinal.  Id. ¶ 31.

The Kulikowskis and Escrow Agents continued to contact Cardinal requesting return of the Proceeds given the rescission.  On December 8, 2020, the Kulikowskis informed Cardinal of their rescission of the Goldwater Loan.  Id. ¶ 32.  Cardinal responded that it would return the Proceeds in five-to-eight business days.  Id.  On December 10, 2020 and December 16, 2020, Great Lakes contacted Cardinal also requesting return of the Proceeds.  Id. ¶ 34.  On both occasions, Cardinal informed Great Lakes that the file was "with the cashier" and that the Proceeds would be returned in two business days.  Id.

On December 28, 2020, MERS, as nominee for Goldwater, recorded the mortgage contemplated by the Goldwater Loan.  Id. ¶ 35.  Goldwater later made a demand on January 5, 2021 to both Cardinal and First Source for return of the Proceeds.  Id. ¶¶ 36–37.

Cardinal has communicated to Goldwater that it will not return the Proceeds until the Cardinal Mortgage is reinstated.  Id. ¶ 39.  According to Goldwater, Cardinal has not made efforts to do so.  Id.  To date, none of the Proceeds have been returned to Goldwater.  Id. ¶ 38.

**IV.     Procedural History**

Goldwater commenced this action against the Kulikowskis, Cardinal and First Source on February 12, 2021.  D. 1.  Goldwater filed an amended complaint on May 3, 2021, adding Great Lakes and Uptown as defendants.  D. 15.

Cardinal now moves to dismiss.   D. 16.   The Kulikowskis filed an answer and counterclaim, D. 21, which Goldwater now moves to dismiss, D. 27.   Uptown also moves to dismiss.  D. 32.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 48.

**V.     Discussion**

**A.     <u>Cardinal's Motion to Dismiss</u>**

*1.     Declaratory Judgment (Count I)*

Goldwater requests that this Court issue a declaratory judgment "establish[ing] reasonable and equitable procedures that adequately protect Goldwater while effectuating the [Kulikowskis'] right to rescind the Goldwater Loan under 15 U.S.C. § 1635; or in the alternative, . . . declar[ing] the [Kulikowskis'] rescission demand null and void if they are unable or unwilling to reasonably effectuate that demand by returning the [Proceeds] as required." D. 15 ¶ 42.  Cardinal argues that, because neither 15 U.S.C. § 1635 nor its implementing regulations at 12 C.F.R. § 1026.23 require or otherwise contemplate that a prior lender participate in rescission procedures, Count I against Cardinal should be dismissed.  D. 17 at 4.

15 U.S.C.  § 1635 of the TILA provides consumers with the right to rescind certain consumer credit transactions by notice to the "creditor."  <u>See</u> 15 U.S.C. § 1635 (directing rescission procedures to the "creditor"); <u>see also</u> 12 C.F.R. § 1026.23 (imposing disclosure requirements

regarding to the consumer's right to rescind on the "creditor").  Section 1602 of the same chapter

defines "creditor" for purposes of TILA:

> The term 'creditor' refers only to a person who both (1) regularly extends, whether
> in connection with loans, sales of property or services, or otherwise, consumer
> credit which is payable by agreement in more than four installments or for which
> the payment of a finance charge is or may be required, and (2) is the person to
> whom the debt arising from the consumer credit transaction is initially payable on
> the face of the evidence of indebtedness or, if there is no such evidence of
> indebtedness, by agreement. . . .

15 U.S.C. § 1602(g).

Here, Cardinal is not "the person to whom the debt arising from the consumer credit

transaction"—that is, the Goldwater Loan—was "initially payable."  See id.  That "person" was

Goldwater.  Thus, Cardinal does not satisfy the second prong of the definition of "creditor" under

TILA.  Although Cardinal served as the Kulikowskis' prior lender as owner of the Cardinal

Mortgage, Cardinal was not the "creditor" of the Goldwater Loan transaction, which was the

transaction rescinded by the Kulikowskis.

Goldwater does not dispute that Cardinal fails to satisfy this two-part definition of

"creditor."  Instead, Goldwater argues that the penultimate sentence of 15 U.S.C. § 1602(g)

establishes an independent definition of "creditor."  See D. 19 at 4–5.  That sentence provides that

"[a]ny person who originates 2 or more mortgages referred to in subsection (aa) in any 12-month

period or any person who originates 1 or more such mortgages through a mortgage broker shall be

considered to be a creditor for purposes of this subchapter."  15 U.S.C. § 1602(g).  According to

Goldwater, this "standalone" definition could encompass Cardinal, thus making Cardinal a proper

party to Goldwater's declaratory judgment claim.  See D. 19 at 4.

Goldwater's suggested reading of the statute does not accord with principles of statutory

interpretation.  A statute's "plain meaning . . . must be given effect," but courts "focus on the plain

meaning of the whole statute, not of isolated sentences." Colón-Marrero v. Vélez, 813 F.3d 1, 11

(1st Cir. 2016) (quoting Arnold v. United Parcel Serv., Inc., 136 F.3d 854, 858 (1st Cir. 1998))

(internal quotation marks omitted).  Reading the penultimate sentence of 15 U.S.C. § 1602(g) in

the context of the entire subsection, this sentence modifies the two-part definition, rather than

creating an independent definition of "creditor . . . so that to be a 'creditor,' one must meet the

[two-part] test . . . but a person can be considered to 'regularly extend consumer credit' under part

[one] of the two-part test 'if' it does the things described" in the penultimate sentence of 15 U.S.C.

§ 1602(g).  See Viernes v. Exec. Mortg., Inc., 372 F. Supp. 2d 576, 582 (D. Haw. 2004); see also

Cetto v. LaSalle Bank Nat. Ass'n, 518 F.3d 263, 273 (4th Cir. 2008) (concluding that this sentence

does not establish an independent definition); Wilson v. Bel Fury Invs. Group, LLC, 2006 WL

297440, *3–4 (D. Neb. Feb. 6, 2006) (concluding same).  Goldwater cites a single case to support

its interpretation.  See D. 19 at 5 (citing Anderson v. Wells Fargo Home Mortg., Inc., 259 F. Supp.

2d 1143, 1149 (W.D. Wash. 2003)).  That case, however, provided no reasoning for its conclusion

that the sentence in question provides "a stand-alone definition, unrelated to the [two-part]

definition" that opens 15 U.S.C. § 1602(g), see Anderson, 259 F. Supp. 2d at 1149, and this Court

does not find it persuasive, particularly in light of the line of cases cited above.

     Because Cardinal is not a "creditor" under TILA for purposes of the Goldwater Loan

transaction, it is not a proper party to Goldwater's declaratory judgment claim, which seeks relief

under TILA.  Any modification of the rescission procedures with respect to the Goldwater Loan

transaction would relate to Goldwater, or its agents, and the Kulikowskis—not Cardinal.[1]

Accordingly, Cardinal's motion to dismiss the declaratory judgment count is ALLOWED.

---

[1] Given this conclusion, the Court does not reach Cardinal's alternative arguments for dismissal of this claim.  See D. 17 at 7.

>    2.    *Conversion (Count IV)*

Cardinal relies upon three grounds for dismissal of Goldwater's conversion claim.  First, Cardinal argues that Goldwater was not the rightful owner of the Proceeds.  D. 17 at 9.  Second, Cardinal argues that its receipt and retention of the Proceeds were not the result of any "positive wrongful act" on its part.  Id. at 10.  Third, Cardinal contends that it should not be held responsible for relying upon the Escrow Agents' implied representation by disbursement of the Proceeds that the transaction had not been rescinded.  Id. at 9–10.  None of these justify dismissal.

Under Massachusetts law, "[t]he elements of conversion may be established by a showing that one person exercised dominion over the personal property of another, without right, and thereby deprived the rightful owner of its use and enjoyment."  In re Hilson, 448 Mass. 603, 611 (2007).  "Money may be the subject of conversion."  Id.

First, Cardinal contends that the amended complaint fails to establish that Goldwater is the rightful owner of the Proceeds.  D. 17 at 9.  To support this argument, Cardinal recites several facts indicating that the Escrow Agents were responsible for the erroneous disbursement of the Proceeds despite being on notice of the Kulikowskis' rescission.  Id.  None of these facts address whether the Goldwater was rightful owner of the Proceeds following the rescission; rather, they speak only to the alleged failures of the Escrow Agents.  Moreover, the facts as pleaded suggest that the Kulikowskis effectuated a valid rescission of the Goldwater Loan transaction under TILA, which would have required a return of the Proceeds to Goldwater.  See D. 15 ¶ 20.

Second, Cardinal contends that it cannot be liable for conversion because its receipt and retention of the Proceeds were not the result of any "positive wrongful act."  D. 17 at 10.  However, "[i]t is no defense to conversion for [a] defendant to claim that he acted in good faith, reasonably believing that he had a legal right to possession of the goods."  Kelley v. LaForce, 288 F.3d 1, 12

(1st Cir. 2002) (applying Massachusetts law).  Indeed, a defendant in lawful possession of property belonging to another may still be liable for conversion if the defendant refuses a demand to return the property.  See Waxman v. Waxman, 84 Mass. App. Ct. 314, 321 (2013).  Cardinal's asserted willingness "to return the Proceeds so long as it is returned to the *status quo ante*," see D. 17 at 11, therefore is insufficient to preclude a finding of conversion if Cardinal intended to exercise dominion over another's property and refused a demand to return it.  Here, the facts as alleged indicate that Cardinal refused to return the Proceeds following repeated demands.  D. 15 ¶¶ 28–34.

Third, Cardinal argues that it should not bear the burden of the Escrow Agents' erroneous distribution of the Proceeds, which constituted an implied representation that the Kulikowskis had not rescinded the transaction.  D. 17 at 10.  TILA regulations required that there be no disbursement of the Proceeds until the rescission period had expired and creditor is reasonably satisfied that the Kulikowskis had not rescinded the transaction.  See id. at 9 (citing 12 C.F.R. § 1026.23(c)).  Cardinal argues that it relied upon the disbursement as evidence that no rescission had occurred, thus discharging the Cardinal Mortgage and cancelling the promissory note secured by the Property upon receipt of the Proceeds.  Id. at 9–10.  This argument, however, does not address that Cardinal allegedly learned about the rescission on December 4, 2020—four days before MERS recorded a Satisfaction and Discharge of the Cardinal Mortgage as Cardinals' nominee.  D. 15 ¶¶ 29–31.  Given the facts as alleged in the amended complaint, Cardinal therefore would have had time to return the Proceeds prior to relying upon any implied representation by the Escrow Agents.

Cardinal relatedly asserts that, even if it was notified of the rescission on December 4, 2020, it was not "properly" notified until after it had discharged the Cardinal Mortgage loan, since

Cardinal was not authorized to discuss the terms of the Cardinal Mortgage loan with third parties under the Fair Debt Collection Practices Act.  D. 17 at 10 (citing 15 U.S.C. § 1692c(b)).  Thus, Cardinal says it only properly learned of the rescission when the Kulikowskis, as a party to the loan, contacted Cardinal on December 8, 2021.  Id. at 11.  Cardinal further asserts that it executed the discharge of the Cardinal Mortgage on December 7, 2020, although the discharge was recorded on the following morning of December 8, 2020.  Id.; but see D. 15 ¶ 31 (alleging only that the satisfaction and discharge of the Cardinal Mortgage was recorded on December 8, 2020). Considering facts outside the amended complaint, however, would be premature at the motion to dismiss stage.

For all these reasons, Cardinal's motion to dismiss the conversion count is DENIED.

### 3.    Chapter 93A (Count V)

Cardinal argues that Goldwater has failed to state a claim under Chapter 93A because its retention of the proceeds was not the result of a "pernicious purpose," an "ulterior motive" or a "coercive or extortionate objective."  D. 17 at 13 (citing Framingham Auto Sales v. Workers' Credit Union, 41 Mass. App. Ct. 416, 418 (1996)).

"Ultimately, 'Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact, subject to the court's performance of a legal gate-keeping function.'" Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009)). Moreover, "Chapter 93A liability may exist if the defendant's conduct falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or is 'immoral, unethical, oppressive or unscrupulous.'"  Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996) (quoting PMP Assoc., Inc. v. Globe Newspaper Co., 366 Mass.

593, 596 (1975)).  As such, "proof of a common law tort, while not necessary for liability . . . may

be sufficient."  Id.; see Meredith Springfield Assocs., Inc. v. Puma Logistics, LLC, No. 17-cv-

30035-MGM, 2018 WL 3340370, at *4 (D. Mass. May 7, 2018) (holding that defendant's liability

under Chapter 93A "follows almost as a matter of course" from defendant's conversion of funds)

(internal citation omitted); see also Mass. Farm Bureau Fed'n, Inc. v. Blue Cross of Mass., Inc.,

403 Mass. 722, 729 (1989) (noting that "a violation of [Chapter 93A] need not be premised on a

violation of an independent common law or statutory duty").

        Here, even if Cardinal bore no responsibility for the initial error of the Proceeds'

disbursement, see D. 17 at 14, the amended complaint alleges that Cardinal proceeded with

recording the satisfaction and discharge of the Cardinal Mortgage despite allegedly receiving prior

notice of the Kulikowskis' rescission, D. 15 ¶ 29–31.  These facts suggest at least a plausible

finding of unfair conduct and a claim under Chapter 93A.  Moreover, that Goldwater has alleged

a plausible claim of conversion further supports this conclusion.[2]

        Accordingly, Cardinal's motion to dismiss the Chapter 93A count is DENIED.[3]

---

[2] Cardinal argues that Goldwater should be ordered to pay Cardinal's attorney's fees
associated with the instant motion to dismiss because Goldwater's claims are "wholly frivolous"
and "not advanced in good faith."  D. 17 at 16–19.  Cardinal bases this request upon a
Massachusetts statute under which a party may seek an award of attorney's fees and costs incurred
in litigation if the plaintiff's claims are "wholly insubstantial, frivolous, and not advanced in good
faith."  See Mass. Gen. L. c. 231, § 6F.  Even if Section 6F applied here, Brandon Associates, LLC
v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 445 (D. Mass. 2005) (noting that Section
6F "is applicable only to cases brought in state courts and does not permit such awards by federal
district courts"), an award of attorneys' fees to Cardinal here where Goldwater prevailed as to
most of the claims that Cardinal sought to dismiss is not warranted.

[3] In its opposition, Goldwater asserts that Cardinal's motion should be denied for failure to
include a certification under Local Rule 7.1(a)(2), which states that "[n]o motion shall be filed
unless counsel certify that they have conferred and have attempted in good faith to resolve or
narrow the issue."  D. Mass. L. R. 7.1(a)(2); see D. 19 at 12.  Cardinal's motion, however, does
include such certification, see D. 16 at 2, and to extent that Goldwater contends that Cardinal did
not confer with its counsel as required by the Local Rule, the Court declines to deny the motion
on this basis and instead addressed the merits of the motion as discussed above.

**B.**     <u>**Uptown's Motion to Dismiss**</u>

*1.*     *Exhibits A–C*

As a preliminary matter, the Court addresses three exhibits upon which Uptown relies in its motion to dismiss.  These exhibits, labeled A through C, were attached to the Affidavit of Jessica Gray Kelly, counsel to Uptown.  <u>See</u> Kelly Aff., D. 34.  Exhibit A purports to be the Notice of Right to Cancel form submitted by the Kulikowskis.  Exh. A, D. 34-1 at 1.  Exhibit B purports to be a redacted email chain forwarded to Uptown by Great Lakes discussing the Kulikowskis' rescission.  Exh. B, D. 34-1 at 3.  Exhibit C purports to be a redacted copy of the wire confirmation for the Goldwater Loan transaction.  Exh. C, D. 34-1 at 15.  Uptown argues that these documents were "incorporated by reference" by Goldwater in its amended complaint and therefore may be considered with respect to Uptown's motion to dismiss.  D. 33 at 4.  Goldwater, however, contends that Uptown's motion improperly relies upon documents outside the pleadings.  D. 38 at 3.

At the motion to dismiss stage, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56."  <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).  Courts have, however, acknowledged certain "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff's claim; or for documents sufficiently referred to in the complaint."  <u>Id.</u>

Here, Exhibits B and C cannot properly be considered.  First, the documents were not incorporated by reference in the amended complaint.  In fact, the amended complaint makes no reference to the email chain contained in Exhibit B or the wire confirmation contained in Exhibit C.  In its reply motion, Uptown argues that "Goldwater explicitly pleads [the email] communication in the amended complaint where it says: 'Great Lakes failed to communicate the

12

rescission to First Source and Uptown on November 30, 2020.'"  D. 51 at 3 (quoting D. 15 ¶ 23).
But even upon a generous reading, this is not an explicit reference to a specific email chain.
Uptown further argues that the wire confirmation was incorporated by reference in the amended
complaint, but the paragraphs to which it cites merely state that the Escrow Agents transferred the
Proceeds to Cardinal; they do not reference any particular document.  See id. (citing D. 15 ¶¶ 24–
25).  Additionally, Goldwater disputes the documents' authenticity, given that the email chain
contains communications from which Goldwater was excluded and because the wire confirmation
comes from Uptown's own records.  D. 38 at 4.

Further, Uptown relies upon these documents to argue that Goldwater unilaterally delayed
the deadline for rescission from November 28, 2020 to November 30, 2020, thereby shifting the
Escrow Agents' duties with respect to the timing of disbursement.  See D. 33 at 4–5; 12 C.F.R.
§ 1026.23(a)(3)(i) (stating that "[t]he consumer may exercise the right to rescind until midnight of
the third business day following consummation").  But this is a defense to Goldwater's claims, not
an allegation central to the claims themselves.  See Gamboa v. MetroPCS Mass., LLC, No. CV
16-10742-GAO, 2017 WL 1227916, at *2 (D. Mass. Mar. 31, 2017) (declining to consider
documents to which the plaintiff "did not refer . . . with any particularity" and that were "not
actually central to the claim, but rather central to a defense").  For these reasons, the Court will not
consider Exhibit B or Exhibit C.

Exhibit A, conversely, may be considered.  Because Goldwater's claims rely upon the fact
that the Notice of Right to Cancel form effectuated a valid rescission of the Goldwater Loan
transaction, the form is "not merely referred to in [P]laintiffs' complaint but [is] absolutely central
to it."  See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988) (considering
allegedly libelous article submitted by defendants with motion to dismiss); see also D. 15 ¶ 20

(referencing the Notice of Right to Cancel form).  Moreover, although Goldwater asserts that it disputes the authenticity of all three exhibits, it only puts forth arguments supporting that assertion with respect to Exhibits B and C.  See D. 38 at 5.

       2.    *Declaratory Judgment (Count I)*

Uptown has moved to dismiss Goldwater's declaratory judgment claim against it, arguing that it "has no interest in whether the [loan secured by the Cardinal Mortgage] is reinstated and otherwise did not cause any harm to Goldwater."  D. 33 at 4.   Such argument does not justify dismissal.  First, Goldwater's declaratory judgment claim relates to the rescission of the Goldwater Loan, so Uptown's lack of interest in the reinstatement of the Cardinal Mortgage loan is irrelevant. Second, Uptown may have caused harm to Goldwater, as the amended complaint suggests that Uptown took insufficient action to secure the return of the Proceeds after receiving instructions from Goldwater to do so.  See D. 15 ¶¶ 27–28.  Finally, as alleged, Uptown acted as an agent of Goldwater in the Goldwater Loan transaction, in which the Kulikowskis executed a valid rescission under TILA, and may have transferred the Proceeds to Cardinal.   See D. 15 ¶ 25 (alleging that "First Source, or Uptown acting on its behalf, transferred [the Proceeds] to Cardinal").  Given the Court's power to exercise its equitable authority under 28 U.S.C. § 2201 and 15 U.S.C. § 1635(b), it may establish rescission procedures that could implicate Uptown. Accordingly, Uptown's motion to dismiss the declaratory judgment count is DENIED.

       3.    *Breach of Fiduciary Duty (Count II) and Breach of Contract (Count III)*

Goldwater claims that Uptown, as one of the Escrow Agents, owed a fiduciary duty to both parties to the escrow agreement and breached that duty by disbursing the Proceeds after the Kulikowskis' rescission.  See D. 15 ¶ 50; D. 38 at 7 (citing NRT New England, Inc. v. Moncure, 78 Mass. App. Ct. 397, 401 (2010) (stating that "[a]n escrow agent assumes a fiduciary duty to the

14

parties to an escrow agreement when it accepts funds and deposits them into its account")).
Goldwater alleges that the Escrow Agents, including Uptown, breached their fiduciary duty of care
by disbursing the Proceeds after the Kulikowskis exercised their right of rescission.  D. 15 ¶ 50.
According to Goldwater, through its notice to Great Lakes of the rescission on November 30, 2020,
Goldwater "fulfilled its duties to inform the Escrow [Agents]" such that the notice may be imputed
to Uptown.  D. 38 at 8.  Goldwater also argues that Uptown breached its fiduciary duty of care by
failing to take sufficient action to secure the return of the Proceeds as instructed by Goldwater.
D. 15 ¶ 50.  In response, Uptown says Goldwater has already admitted that Uptown was not
notified of the rescission by Great Lakes on November 30, 2020; thus, Goldwater cannot show
that Uptown breached any fiduciary duty by disbursing the Proceeds on that day.  D. 51 at 4.

     In its amended complaint, Goldwater alleges that "Great Lakes failed to communicate the
rescission to First Source and Uptown on November 30, 2020."  D. 15 ¶ 23.  Goldwater, however,
has alleged no facts supporting its argument that Uptown was responsible for Great Lakes' failure
to notify the other Escrow Agents.  Further, the amended complaint provides no basis to suggest
that the Kulikowskis' period to rescind the Goldwater Loan transaction extended beyond midnight
of the third business day following the consummation of the transaction (i.e., on November 28,
2020).  See 12 C.F.R. § 1026.23(a)(3)(i).  Thus, Uptown's role in the disbursement itself does not
necessarily provide a basis for Goldwater's breach of fiduciary duty claim against Uptown.

     Nevertheless, the amended complaint pleads adequate facts to suggest that Uptown took
insufficient action to secure the return of the Proceeds.  Goldwater alleges that although it sent
"explicit instructions" to the Escrow Agents to secure the return of the Proceeds on December 1,
2020, the Escrow Agents did not contact Cardinal until December 4, 2020.  D. 15 ¶¶ 27–28.
Viewing these facts in the light most favorable to Goldwater, the Court concludes that a breach of

fiduciary duty claim has been plausibly pled against Uptown for this allegedly insufficient response. Accordingly, Uptown's motion to dismiss the breach of fiduciary duty count is DENIED.

Goldwater's alternative breach of contract claim survives for the same reasons. Given the Escrow Agents' alleged failure to take action to secure the return of the Proceeds as pleaded in the amended complaint, the Court cannot conclude that Uptown did not breach any contractual duty to Goldwater. Accordingly, Uptown's motion to dismiss the breach of contract count is DENIED.

### C. Goldwater's Motion to Dismiss the Kulikowskis' Counterclaim

#### 1. Pleading Standard

Goldwater argues that the Kulikowskis' counterclaims must be dismissed because they fall short of the applicable pleading standards. D. 28 at 3–8. Goldwater observes that the Kulikowskis included limited factual content in their counterclaim. See id. In their answer, however, the Kulikowskis do not deny most of the facts alleged in the amended complaint. See D. 21 at 1–5 (admitting some allegations or indicating insufficient knowledge to admit or deny other allegations). As a result, the Court will assume the facts as alleged in the amended complaint for purposes of the Kulikowskis' counterclaim (except for those contained in the four paragraphs denied by the Kulikowskis), in addition to those alleged in the counterclaim itself. See id. (denying allegations contained in paragraphs 11, 32, 42 and 43 of the amended complaint). Below, the Court considers each of Goldwater's arguments for dismissal in turn.

#### 2. Standing

Goldwater argues that the Kulikowskis lack Article III standing, justifying dismissal for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). D. 28 at 8. To establish standing, a party must show that it has suffered an "injury in fact" that is "concrete and particularized" and

"actual or imminent, not conjectural or hypothetical." Bennett v. Spear, 520 U.S. 154, 167 (1997)

(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).  According to Goldwater,

the Kulikowskis' only theory of injury—that they have "suffered and will continue to sustain

damages based on the cost to cure"—fails because this could only refer to attorney' fees and other

costs and expenses related to litigation.  D. 28 at 8–9 (citing Pemental v. Bank of New York

Mellon, No. CV 16-483S, 2017 WL 3279015, at *8 (D.R.I. May 10, 2017) (holding that attorney's

fees, costs and expenses incurred in litigating TILA claim do not qualify as injury in fact)).  But

this interpretation takes too narrow a view of the Kulikowskis' alleged injury and does not comport

with the Court's obligation to construe the claims "liberally, . . . drawing all reasonable inferences

in favor of the [nonmoving party]." See Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998).

The facts as alleged in the amended complaint state that "[o]n December 28, 2020, MERS, as

nominee for Goldwater, recorded the mortgage contemplated by the Goldwater Loan, which

intended to provide Goldwater with a lien over the [Property]." D. 15 ¶ 35.  At least the imposition

of this lien, which the Kulikowskis allege was wrongfully recorded after they had rescinded the

Goldwater Loan transaction, D. 21 at 8 ¶ 8, provides a basis for concluding that the Kulikowskis

have suffered an injury in fact sufficient to grant standing for their counterclaims in this case.

### 3.    *Declaratory Relief Counterclaim (Count I)*

Goldwater argues that the Kulikowskis' declaratory relief claim should be dismissed for

two reasons.  First, according to Goldwater, the Kulikowskis' counterclaim fails to plead a

substantial controversy between the parties.  D. 28 at 10 (citing Golden v. Zwickler, 394 U.S. 103,

108 (1969)).  Second, Goldwater contends that the Court should dismiss the counterclaim because

it is redundant of Goldwater's own declaratory judgment claim.  Id. (citing Zurich Am. Ins. Co. v.

Watts Regulator Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011)).

Both arguments fail. First, the legal effect of the rescission on the parties' rights and responsibilities involves "concrete legal issues," not "abstract question[s]" of law. See Golden, 394 U.S. at 108 (citations omitted). The Kulikowskis' claim that Goldwater failed to effectuate their rescission and wrongfully recorded a new mortgage on the Property suggests a substantial controversy. Second, the Kulikowskis' declaratory relief claim is not redundant of that of Goldwater, as the Kulikowskis seek a general declaration of the parties' rights and responsibilities following rescission, D. 21 at 7 ¶ 4, whereas Goldwater specifically seeks procedures to protect its interests or, in the alternative, a declaration that the Kulikowskis' rescission was null and void, D. 15 ¶ 42.

Accordingly, Goldwater's motion to dismiss the declaratory relief count is DENIED.

4.    *Consumer Protection Act and Truth in Lending Act Counterclaim*
      *(Count II)*

Goldwater argues that the Kulikowskis' claims for breaches of the Consumer Protection Act and Truth in Lending Act should be dismissed because the claims "fail[] to identify which statutory provisions were violated, what conduct violated those provisions, and how the [Kulikowskis] were injured." D. 28 at 7. The Kulikowskis' Consumer Protection Act claim fails in this regard, as it merely alleges that "Goldwater is subject to the Consumer Protection Act" and that "Goldwater's conduct . . . constitutes breaches of the Consumer Protection Act," without citation to any specific provision. See D. 21 at 7 ¶¶ 5–6.

With respect to the TILA claim, however, the facts as alleged in the amended complaint provide a plausible basis for concluding that Goldwater violated TILA. There is no dispute that Goldwater is subject to the provisions of TILA and its implementing regulations, that the Kulikowskis executed a Notice of Right to Cancel form, rescinding the Goldwater Loan transaction, or that the Escrow Agents disbursed the Proceeds on Goldwater's behalf despite the

18

Kulikowskis' rescission.  D. 15 ¶¶ 20, 24; see D. 35 at 7–8.  Further, TILA provides homeowners

with a private right of action for damages suffered due to violations of the act.  McKenna v. Wells

Fargo Bank, N.A., 693 F.3d 207, 211 (1st Cir. 2012).

Accordingly, Goldwater's motion to dismiss counterclaim Count II is ALLOWED with

respect to the Consumer Protection Act claim but DENIED as to the TILA claim.

### 5.    Breach of Contract Counterclaim (Count III)

Goldwater argues the Kulikowskis have failed sufficiently to allege how Goldwater failed

to act, how that purported failure breached the contract, that the Kulikowskis satisfied their

obligations under the contract and how the Kulikowskis were injured.  D. 28 at 7.  The Kulikowskis

respond that the facts as alleged plausibly support all the elements for a breach of contract claim.

D. 35 at 9–10.

"Under Massachusetts law, a breach of contract claim requires the plaintiff to show that

(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to

perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages

as a result."  Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013).  Here, the counterclaim identifies

a valid contract between the parties.  D. 21 at 8 ¶ 7.  The facts suggest that the Kulikowskis were

ready, willing and able to perform under the contract, as Goldwater originated a mortgage loan to

the Kulikowskis secured by the Property, presumably because of the Kulikowskis' satisfactory

performance.  D. 15 ¶ 11.  Further, the counterclaim alleges sufficient facts plausibly to suggest

that Goldwater breached the contract by failing to effectuate the Kulikowskis' rescission by

recording a lien against the Property.  D. 21 at 8 ¶ 8.  Finally, the Kulikowskis allege plausible

damages in the form of a new mortgage being applied to their residence despite their rescission.

Id. at 8 ¶ 9; D. 35 at 10.

Accordingly, Goldwater's motion to dismiss the breach of contract count is DENIED.

### 6.      *Negligence Counterclaim (Count IV)*

Goldwater argues that the Kulikowskis' negligence claim should be dismissed because it does not identify any duty that Goldwater owed to the Kulikowskis, identify how the Kulikowskis were injured or establish a causal link between a breach of duty and the Kulikowskis' injury.  D. 28 at 7.  The Kulikowskis respond that Goldwater owed them a duty of care because they "placed their trust in Goldwater" to abide by the law and the terms of the mortgage agreement and that "Goldwater accepted the [Kulikowskis'] trust."  D. 35 at 11.  Further, according to the Kulikowskis, Goldwater breached its duty of care by failing to act on the executed rescission, causing damages in the form of legal fees, a new lien on the Property and the inability to obtain a new mortgage.  Id. at 12.

Even assuming Goldwater's actions caused harm to the Kulikowskis, their negligence claim fails.  "The relationship between a borrower and lender does not give rise to a duty of care under Massachusetts law."  MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013).  The only relationship between the Kulikowskis and Goldwater was a borrower-lender relationship.  Further, Goldwater's supposed acceptance of the Kulikowskis "trust," see D. 35 at 11, is insufficient to establish an independent duty of care.  Goldwater therefore owed the Kulikowskis no common-law duty of care.  Accordingly, Goldwater's motion to dismiss the negligence count is ALLOWED.

### 7.      *Chapter 93A Counterclaim (Count V)*

Goldwater contends that the Kulikowskis have failed to identify specific facts in their counterclaim to show how Goldwater's conduct was unfair or deceptive for purposes of Chapter 93A.  See D. 28 at 11.  But as discussed above, the Court will assume the facts as alleged in the

amended complaint (except those specifically denied by the Kulikowskis), in addition to those alleged in the counterclaim itself.  As argued by the Kulikowskis in opposition, D. 35 at 14, those facts allege that Goldwater entered into a mortgage agreement with the Kulikowskis subject to a right of rescission but recorded a mortgage against the Property even after the Kulikowskis had rescinded the transaction, D. 15 ¶¶ 11, 20, 35; D. 21 at 8 ¶¶ 7–8.  Under the applicable Chapter 93A standards, discussed above, this conduct establishes a plausible claim that Goldwater engaged in unfair or deceptive trade practices causing injury to the Kulikowskis.  Accordingly, Goldwater's motion to dismiss the Chapter 93A counterclaim is DENIED.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Cardinal's motion to dismiss, D. 16, DENIES Uptown's motion to dismiss, D. 32, and ALLOWS IN PART and DENIES IN PART Goldwater's motion to dismiss the Kulikowskis' counterclaim, D. 27.  Accordingly, the declaratory judgment claim against Cardinal and the Consumer Protection Act and negligence counterclaims against Goldwater are dismissed.  The conversion and Chapter 93A claims against Cardinal; declaratory judgment, breach of fiduciary duty and breach of contract claims against Uptown; and declaratory relief, TILA, breach of contract and Chapter 93A counterclaims against Goldwater remain.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

21